# In the United States Court of Federal Claims

No. 24-750
(Filed:  27 September 2024)[*]

```
*****************************************
TWO KNIGHTS DEFENSE, LLC,             *
                                      *
                Plaintiff,            *
                                      *
v.                                    *
                                      *
THE UNITED STATES,                    *
                                      *
                Defendant,            *
                                      *
and                                   *
                                      *
FIVE STONES RESEARCH CORP.,           *
                                      *
                Defendant-Intervenor. *
                                      *
*****************************************
```

     *Benjamin Randall Little*, Dentons Sirote PC, with whom were *Roderic G. Steakley*, and *Alyse N. Windsor*, of Florence, Huntsville, and Birmingham, AL respectively, for plaintiff Two Knights Defense, LLC.

     *Tate Nathan Walker*, Trial Counsel, with whom were *Douglas K. Mickle*, Assistant Director, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division, Department of Justice, *Brian Chapuran*, and *Patrick Holly* of Missile Defense Agency, and *Captain Natalie W. McKiernan*, and *Captain Blaine L. Hutchinson*, of the Department of the Army, all of Washington, DC, for defendant.

     *Jon Davidson Levin*, Womble Bond Dickinson, of Huntsville, AL, for defendant-intervenor Five Stones Research Corporation.

## OPINION AND ORDER

**HOLTE, Judge.**

---

[*] This Opinion was originally filed under seal on 24 September 2024 pursuant to the protective order in this case. The Court provided the parties an opportunity to review this Opinion for any proprietary, confidential, or other protected information and submit proposed redactions by 27 September 2024 at 5:00 p.m. (ET).  The parties proposed redactions by the deadline.  The Court accepts the parties' proposed redactions and reissues the Opinion, with a few minor, non-substantive corrections and redacted language removed on figures and/or replaced as follows: "[XXXXX]."

Plaintiff Two Knights Defense, LLC ("Two Knights" or "2KD") brings this post-award bid protest challenging the United States Department of Defense's Missile Defense Agency ("MDA") award of a contract for Information Technology and Cybersecurity Management ("ITCM") to defendant-intervenor Five Stones Research Corp.  ("Five Stones" or "5SRC").  This protest is directly related to a prior bid protest, *Two Knights Defense, LLC v. United States* ("*Two Knights I*"), Case No. 22-1932, which was dismissed in May 2023, after MDA undertook voluntary corrective action.  Following the government's corrective action and subsequent re-award of the contract to Five Stones, Two Knights now files this second bid protest arguing MDA erred in its assessment of Two Knights' revised proposal regarding the "Mission Capability" and Past Performance Factors.  Two Knights asserts MDA deviated from the Solicitation's evaluation criteria and failed to consider certain proposal information from Two Knights.  For the following reasons, the Court denies plaintiff Two Knights' Motion for Judgment on the Administrative Record (MJAR), grants the government's Cross-MJAR, and grants Five Stone's Cross-MJAR.

## I.      Factual Background

### A.      Contract Details and Initial August 2022 Award

On 27 December 2021, MDA issued Solicitation No. HQ0858-22-R-0002 for ITCM services under its Technical, Engineering, Advisory and Management Supports (TEAMS)-Next series of contracts.  *See* Pl.'s Mot. J. Admin. Rec. ("Pl.'s MJAR") at 1, 3, ECF No. 30. Solicitation No. HQ0858-22-R-0002 seeks "to procure ITCM services in support of MDA's 'mission to develop, test, and field an integrated, layered Missile Defense System (MDS) to defend the United States (U.S.), its deployed forces, allies, and friends against all ranges of enemy missiles in all phases of flight.'"  *Id.* at 3 n.2.  The Solicitation merges two existing contracts into the new TEAMS-Next ITCM contract.  *See id.* at 1.  Fives Stones performs one of the existing contracts—an architecture and network operations support services contract—while System High Corporation, a joint venture of Two Knights,[1] performs the cyberspace mission support and management services contract.  Gov't Cross MJAR at 3–4 (first citing Admin. R. ("AR") Tab 145b at 17426 (Contracting Officer Statement of Facts); then citing AR Tab 16a at 1541, 44 (Section L - Instructions, Conditions, and Notices to Offerors); and then citing AR Tab 11 at 463–64 (Solicitation Section L - Instructions, Conditions, and Notices to Offerors)), ECF No. 33.  Proposals were to address six evaluation factors:  (1) Mission Capability; (2) Information Management and Control Plan; (3) Organizational Conflict of Interest Management Plan; (4) Facility Clearance; (5) Past Performance; and (6) Cost and Price.  AR Tab 16a at 1553–61 (Solicitation Section L - Instructions, Conditions, and Notices to Offerors).  Plaintiff's challenges relate to (1) Mission Capability; and (5) Past Performance.

Mission Capability includes four subfactors:  (1) Cyberspace Mission Support Activities; (2) Network Operations Support; (3) Architecture and Engineering across IT Functional Areas; and (4) Human Capital Management.  AR Tab 16a at 1553 (Solicitation Section L - Instructions, Conditions, and Notices to Offerors).  Plaintiff specifically challenges Mission Capability subfactor 2 (MSC2), which states the following:

---

[1] Two Knights is a joint venture comprised of System High Corporation and Cintel, Inc.  Pl.'s MJAR at 1–2.

7.3 Subfactor MCS2: Network Operations Support
The Offeror shall propose its approach to and understanding of oversight and governance of Network Operations Support, to accomplish the following mission tasks:

MCS2 Element #1: Providing assistance and oversight management of a complex and geographically dispersed IT environment operating at various classification levels that includes multiple networks and hybrid cloud computing environments[.]

AR Tab 16a at 1554 (Solicitation Section L - Instructions, Conditions, and Notices to Offerors).

Regarding Past Performance, the Solicitation instructed offerors to provide "recent[2] and relevant contracts" in their submission of Past Performance Information (PPI). AR Tab 16a at 1558 (Solicitation Section L - Instructions, Conditions, and Notices to Offerors). The Solicitation stated MDA would assess each offeror's PPI for relevancy by measuring "similarity between the service/support effort, complexity, dollar value, contract type, and subcontractor(s)." AR Tab 15c at 1520–21. To "demonstrat[e] relevan[t]" contracts, "the Offeror's PPI submissions should focus on the following tasks: a) Architecture & System Engineering[;] b) Network Operations Support[;] c) Cyberspace Mission Support[; and] d) Management." AR Tab 16a at 1561 (Solicitation Section L - Instructions, Conditions, and Notices to Offerors); *see also* AR Tab 15c at 1520–21 (Solicitation Section M - Evaluation Factors for Award).

MDA stated the following as to its evaluation method and basis for award—on a best value tradeoff basis—in the Solicitation:

The Government will select for award the most advantageous proposal *representing the best value* to the Government based upon an integrated assessment of Past Performance, Mission Capability and Cost/Price. Mission Capability includes four (4) subfactors: Cyberspace Mission Support Activities (MCS1), Network Operations Support (MCS2), Architecture and Engineering across IT Functional Areas (MCS3), and Human Capital Management (MCS4). Cyberspace Mission Support (CMS) (MCS1) and Network Operations Support (MCS2) are of equal relative importance, and each are more important than each of the Architecture and Engineering across IT Functional Areas (MCS3) and Human Capital Management (MCS4) subfactors, which are of relative equal importance.

At the factor level, *Past Performance is more important than Mission Capability*. When combined, Mission Capability and Past Performance are significantly more important than Total Evaluated Price. Cost and Price will not be scored, but will be evaluated for reasonableness and realism, and will be considered as part of the integrated assessment of best value.

. . . .

---

[2] The parties do not dispute recency, which is defined as "work performed during the five-year period preceding the date of this solicitation release." AR Tab 15c at 1520 (Solicitation Section M - Evaluation Factors for Award).

Award may be made to a higher rated, higher priced Offeror where the Source Selection Authority (SSA) reasonably determines that the mission capability and/or past performance of the higher priced Offeror outweighs the price differential.

AR Tab 15c at 1512 (Solicitation Section M - Evaluation Factors for Award) (emphasis added).

The Solicitation states the following with regard to MDA's evaluation of Mission Capability:

The combined technical/risk evaluations shall utilize the combined technical/risk ratings listed in Table M-3 in conjunction with the risk descriptions set forth in Table M-4.[]
. . . .
The Government will evaluate the Mission Capability approach of each Offeror. Each subfactor within the Mission Capability factor will receive one of the combined technical/risk ratings in Table M-3. The combined technical/risk ratings include consideration of risk, in Table M-4, in conjunction with strengths, weaknesses, significant weaknesses, and deficiencies, in Table M-2, in determining technical ratings. The Government will not roll up the Mission Capability subfactor ratings into an overall factor adjectival/color rating.

Evaluation of the Offeror's Mission Capability subfactors shall be based solely on information furnished by the Offeror. To ensure sufficient information is available, the Offeror must furnish, as part of its proposal, all descriptive material necessary for the Government to determine if the Offeror's approach meets the requirements of the solicitation.

AR Tab 15c at 1513, 1515–16 (Solicitation Section M - Evaluation Factors for Award). Relevant to this protest, Table M-2 defines a "Deficiency" as follows: "A material failure of a proposal to meet a Government requirement or a combination of significant weaknesses in a proposal that increases the risk of unsuccessful contract performance to an unacceptable level." AR Tab 15c at 1514 (Section M - Evaluation Factors for Award). Table M-3, which states the "Combined Technical/Risk Rating Method," details what constitutes a "Red/Unacceptable" rating: "Proposal does not meet requirements of the solicitation, and thus, contains one or more deficiencies, and/or risk of unsuccessful performance is unacceptable. Proposal is unawardable." AR Tab 15c at 1514 (Section M - Evaluation Factors for Award). Table M-3 states a "Purple/Good" rating as follows: "Proposal indicates a thorough approach and understanding of the requirements and contains at least one strength, and risk of unsuccessful performance is no worse than moderate." *Id.* Table M-4, the "Technical Risk Rating Method," encompasses ratings from "High," "Moderate," "Low," and "Unacceptable." AR Tab 15c at 1515 (Section M - Evaluation Factors for Award).

For MCS2, the Solicitation provides the following evaluation method:

4.2 Subfactor MCS2: Network Operations Support

The Government will evaluate the Offeror's approach to, and understanding of oversight and governance of Network Operations Support, to accomplish the following mission tasks:

MCS2 Element #1: Providing assistance and oversight management of a complex and geographically dispersed IT environment operating at various classification levels that includes multiple networks and hybrid cloud computing environments.

AR Tab 15c at 1516 (Section M - Evaluation Factors for Award).

For Past Performance, the Solicitation stated: "The past performance evaluation determines the Government's confidence in the Offeror's probability of successfully performing the required effort *based on the demonstrated recent and relevant record of performance*, and *quality of performance*, in supplying services that meet the contract's requirements." AR Tab 15c at 1520 (Solicitation Section M - Evaluation Factors for Award) (emphasis added). Further: "[b]ased on an evaluation of recency, relevancy, and quality of past performance information, the Past Performance Evaluation Team will determine an overall Performance Confidence Assessment Rating at the factor level"—ranging from "No Confidence," to "Limited Confidence," to "Neutral Confidence," and to "Satisfactory Confidence." AR Tab 15c at 1520, 1523 (Solicitation Section M - Evaluation Factors for Award). Specifically regarding relevancy, the Solicitation states the following:

Relevancy as it pertains to past performance information is a measure of the extent of similarity between the service/support effort, complexity, dollar value, contract type, and subcontractor(s). This area demonstrates the depth and breadth of relevant experience of the Offeror.

The Past Performance Evaluation Team will conduct an in-depth review and evaluation of all performance data obtained to determine whether those efforts relate to the proposed effort.

In assessing relevancy, the Government will focus on the following tasks:

a) Architecture & System Engineering
b) Network Operations Support
c) Cyberspace Mission Support
d) Management

AR Tab 15c at 1520–21 (Solicitation Section M - Evaluation Factors for Award). In August 2022, MDA awarded the TEAMS-Next ITCM contract to Five Stones. *See* AR Tab 128.

**B.      *Two Knights Defense, LLC v. United States* ("*Two Knights I*"), Case No. 22-1932**[3]

---

[3] Prior to the filing of plaintiff's first Court of Federal Claims protest, plaintiff filed a protest at the GAO in September 2022, which was denied. *Two Knights Defense, LLC*, B-421053, Dec. 16 2022, 2023 CPD ¶ 4; AR Tab

On 30 December 2022, plaintiff filed a post-award protest in this court challenging the MDA's award of the contract to Five Stones, alleging five counts against the United States. Compl., *Two Knights I*, No. 22-1932 (Fed. Cl. Dec. 30, 2022), ECF No. 1. On 13 February 2023, plaintiff moved to amend the complaint, adding three additional counts. Mot. for Leave to Amend Compl., Ex. 1, *Two Knights I*, No. 22-1932 (Fed. Cl. Feb. 13, 2023), ECF No. 36-1 (Proposed Amended Complaint). Plaintiff's counts in *Two Knights I* largely differ from those counts in this case.[4] From February through March 2023, the parties completed full MJAR briefing in *Two Knights I*. *See* Pl.'s MJAR, *Two Knights I*, No. 22-1932 (Fed. Cl. Feb. 10, 2023), ECF No. 34; Gov't's Cross-MJAR & Resp., *Two Knights I*, No. 22-1932 (Fed. Cl. Mar. 3, 2023), ECF No. 42; 5SRC Cross-MJAR & Resp., *Two Knights I*, No. 22-1932 (Fed. Cl. Mar. 3, 2023), ECF No. 43; *see* Pl.'s Resp., 5SRC Reply, Gov't Reply, *Two Knights I*, No. 22-1932 (Fed. Cl. Mar. 17, 31, & Apr. 7 2023), ECF Nos. 44, 46, 49. The Court held oral argument on the cross-MJARs on 9 May 2023. *See* 5 April 2023 Order, ECF No. 47. On 12 May 2023, the parties filed a joint status report (JSR) noting MDA agreed to take voluntary corrective action "to establish a competitive range, conduct discussions, allow final proposal revisions without restrictions on which volumes offerors can update, evaluate revised proposals, and make a new award decision"—which "render[ed] the allegations raised in 2KD's complaint and amended complaint moot"—and, on 17 May 2023, 2KD filed a stipulation of dismissal pursuant to RCFC 41(a)(1)(A)(ii). *See Two Knights I*, No. 22-1932 (Fed. Cl. May 12, 17, 2023), ECF Nos. 59, 60.

### C.    Corrective Action, Contract Re-award, and GAO Protest

On 16 May 2023, MDA re-opened the source selection competition—"establish[ing] a competitive range and notify[ing] offerors of their inclusion or exclusion from the competitive range and provid[ing] evaluation notices to those offerors included in the competitive range." AR Tab 90a at 12876 (2KD Email Notification of Reopened Source Selection). On 16 June 2023, MDA notified Five Stones, 2KD, and Mission Innovate (MI) they were part of the competitive range and MDA would conduct discussions thereafter. *See* AR Tab 99 (Competitive Range Notice); *see* AR Tab 128 at 16179 (MDA Source Selection Decision). MDA then requested Final Proposal Revisions (FPRs), AR Tab 120–120e7, and conducted new evaluations using the FPRs. *See* AR Tab 127 (Final Proposal Analysis Report). In December 2023, MDA

---

128 at 16179 (MDA Source Selection Decision) ("A Post-Award Protest was filed with Government Accountability Office (GAO) on September 14, 2022" which was "denied [by the GAO] . . . on December 16, 2022.").

[4] Those Counts are as follows:

COUNT I – Failure to Conduct Discussions
COUNT II – Unreasonable Past Performance Evaluation
COUNT III – The Agency's Cost/Price Evaluation was Flawed
COUNT IV – Unreasonable Mission Capability Evaluation
COUNT V – Unreasonable Best Value Decision
COUNT VI – Unreasonable past performance evaluation of Five Stones
COUNT VII – Unequal evaluation of proposals
COUNT VIII – The Agency allowed Five Stones to compete with a non-compliant proposal

*Compare* Compl., *Two Knights I*, No. 22-1932 (Fed. Cl. Dec. 30 2022), ECF No. 1; *and* Am. Compl., *Two Knights I*, No. 22-1932 (Fed. Cl. Feb. 14, 2022), ECF No. 38, *with* Compl.

re-awarded the contract to Five Stones, *see* AR Tab 127 (Final Proposal Analysis Report), AR Tab 128 (MDA Source Selection Decision), providing the following evaluation results:

| | 5SRC | | | | | 2KD | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Factor 1: Mission Capability** | Combined Technical/Risk | | | | | Combined Technical/Risk | | | |
| MCS1: Cyberspace Mission Support Activities | **Good/Low** | | | | | **Acceptable/Low** | | | |
| | S | W | SW | D | | S | W | SW | D |
| | *1* | *0* | *0* | *0* | | *0* | *0* | *0* | *0* |
| MCS2: Network Operations Support | **Acceptable/Low** | | | | | **Unacceptable/Unacceptable** | | | |
| | S | W | SW | D | | S | W | SW | D |
| | *0* | *0* | *0* | *0* | | *1* | *0* | *0* | *1* |
| MCS3: Architecture and Engineering | **Acceptable/Low** | | | | | **Acceptable/Low** | | | |
| | S | W | SW | D | | S | W | SW | D |
| | *0* | *0* | *0* | *0* | | *0* | *0* | *0* | *0* |
| MCS4: Human Capital Management | **Outstanding/Low** | | | | | **Outstanding/Low** | | | |
| | S | W | SW | D | | S | W | SW | D |
| | *2* | *0* | *0* | *0* | | *2* | *0* | *0* | *0* |
| **Factor 2: IMCP** | Acceptable | | | | | Acceptable | | | |
| **Factor 3:  OCI Management Plan** | Acceptable | | | | | Acceptable | | | |
| **Factor 4:  Facilities Clearance** | Acceptable | | | | | Acceptable | | | |
| **Factor 5:  Past Performance** | Substantial Confidence | | | | | Satisfactory Confidence | | | |
| **Factor 6:  Cost/Price** | | | | | | | | | |
| Proposed Cost/Price | $263,408,408 | | | | | $237,754,732 | | | |
| Total Evaluated Price | $263,408,408 | | | | | $237,754,732 | | | |

AR Tab 127 at 15961 (Final Proposal Analysis Report); *see also* AR Tab 128 at 16181 (MDA Source Selection Decision).  MDA explained:

> 5SRC['s] proposal was the highest rated for Past Performance with a Substantial Confidence Rating, and was the most advantageous to the Government under the Mission Capability factor. 5SRC['s] proposal's total evaluated price of $263,408,408 represents the best value to the Government based on the confidence assessment in Past Performance, as well as, strengths/advantages identified in MCS1, MCS2 and MCS4.
>
> The 2KD's proposal was evaluated with a deficiency for MCS2 Network Operations Support and was rated Red/Unacceptable and therefore is unawardable.

AR Tab 128 at 16180 (MDA Source Selection Decision).  Specifically with regard to Two Knights' proposal and MCS2, MDA stated:

> The 2KD proposal is rated Red/Unacceptable because the proposal does not meet requirements in Technical Subfactor MSC2 Element #1, part 2 and contains one deficiency increasing the risk of unsuccessful performance to an unacceptable level. . . . For the deficiency, 2KD does not propose tasks for Subfactor MSC2 Element #1, part 2 or understanding of the process related to hybrid cloud computing environments in the MDA infrastructure.  Proposal is unawardable[.]
>     . . . .

2KD fails to propose specific language with regard to hybrid cloud infrastructure and lacks proposing any specific detail to a hybrid cloud solution. Based on the language in the proposal, the only reference to cloud infrastructure mentioned is their yet-to-go-live implementation of the 2KD internal SHARC [SYSTEM HIGH Analytical Research Center] platform, and a discussion of cloud providers. These elements do not show an understanding of MDA hybrid cloud requirements. 2KD does not propose anything related to MDA hybrid cloud in the proposal.

In accordance with Section M 4.2, MCS2, Element #1 (Part 2), the proposed approach for providing assistance and oversight management of a complex and geographically dispersed IT environment operating at various classification levels that includes hybrid cloud computing environments failed to address hybrid cloud infrastructure nor propose how to manage and/or support hybrid cloud infrastructure.   This is a deficiency based on a material failure of the proposal which increases the risk of contract performance to an unacceptable level because MDA is in the midst of a hybrid cloud migration of many IT services, and this function is required to support MDA moving forward.

AR Tab 127 at 16089–90 (Final Proposal Analysis Report).  MDA gave Two Knights' Past Performance a "Satisfactory Confidence" rating.  AR Tab 127 at 16118 (Final Proposal Analysis Report).

After MDA's December 2023 re-award, Two Knights filed a protest at the Government Accountability Office (GAO) challenging MDA's decision.  *Two Knights Defense, LLC*, B-421053.2, Apr. 30, 2024.  This protest was denied.  *Id.*

D.    **Procedural History in This Case**

On 13 May 2024, plaintiff filed under seal its Complaint in this case, challenging MDA's re-award of the contract.  Compl., ECF No. 1.  Concurrently with its complaint, plaintiff submitted its (1) Motion for Preliminary Injunction and a supporting memorandum, ECF Nos. 2, 2-1;[5] (2) Motion to Seal the Complaint and Motion for Preliminary Injunction, ECF No. 3; (3) Motion for Protective Order, ECF No. 4; (4) Sealed Proposed Redacted Complaint, ECF No. 5; and (5) Sealed Proposed Redacted Motion for Preliminary Injunction, ECF No. 6.  On 14 May 2024, Five Stones filed an unopposed motion to intervene as a defendant, ECF No. 12, which the Court granted, ECF No. 13.  On 16 May 2024, the Court granted plaintiff's Motion to Seal and plaintiff's Motion for Protective Order, ECF No. 13.  On 22 May 2024, the Court filed the Protective Order in this case, ECF No. 15.  Also on 22 May 2024, the parties filed a JSR proposing a briefing schedule, ECF No. 18.  On 23 May 2024, the Court held an initial status conference with the parties, and on 24 May 2024, the Court set the MJAR briefing schedule.  On 7 June 2024, the government filed a Consented Motion to Amend/Correct the Administrative Record with additional documents related to a Contractor Performance Assessment Reporting (CPAR) that was inadvertently omitted, ECF No. 28, which the Court granted, ECF No. 29.  On 18 June 2024, Two Knights filed its MJAR.  Pl.'s MJAR, ECF No. 30.  On 10 July 2024, the

---

[5] At oral argument, plaintiff agreed this Motion is moot.  23 Aug. 2024 Oral Arg. Tr. ("Tr.") at 6:8–11.  The Court accordingly finds as moot plaintiff's Motion for Preliminary Injunction, ECF No. 2.  *See infra.*

government and Five Stones filed their respective cross-MJARs and Responses.  Gov't's Cross-MJAR, ECF No. 32; 5SRC Cross-MJAR, ECF No. 33.  On 22 July 2024, plaintiff filed its Response in Opposition to the Cross-MJARs and Reply in Support of its MJAR.  Pl.'s Resp. and Reply, ECF No. 34.  On 29 July 2024, the government and Five Stones filed their respective replies to plaintiff's Response and Reply.  Gov't's Reply, ECF No. 38; 5SRC Reply, ECF No. 39.  On 23 August 2024, the Court held oral argument.  *See* 29 July 2024 Order, ECF No. 37.

## II.    Parties' MJAR Arguments

### A.    Plaintiff's Argument MDA's MCS2 Evaluation of 2KD was Arbitrary, Capricious, an Abuse of Discretion, or Otherwise not in Accordance with Law

Plaintiff alleges MDA "departed from the stated evaluation scheme, applied unstated evaluation criteria, and failed to recognize and consider pertinent information in the appropriate section of 2KD's proposal" in assessing 2KD's MCS2 proposal submission, leading MDA to improperly rate its MCS2 approach.  Pl.'s MJAR at 12.  Specifically, Two Knights challenges MDA's evaluation of "'2KD's proposal . . . [which allegedly] fail[ed] to provide an approach to hybrid-cloud computing environments.'"  *Id.* at 13 (quoting AR Tab 127 at 16151).  Plaintiff alleges its proposal indeed "provide[d] [Two Knight's] approach for assistance and oversight management of the IT environment described in MCS2, Element 1, which includes hybrid cloud environments," and MDA impermissibly examined "whether 2KD proposed how to design, develop, or, as MDA now puts it, 'accomplish,' a hybrid cloud environment."  *Id.*  In its Reply, plaintiff raises the argument that MDA is judicially estopped from allegedly changing its position at the GAO on 2KD being required to "accomplish" a hybrid cloud.  Pl.'s Resp. and Reply at 6.  In response to the government's and Five Stones' *Blue & Gold* arguments, *see infra*, plaintiff argues it is not challenging the Solicitation's terms.  *Id.* at 13 (discussing *Blue & Gold Fleet, L.P., v. United States*, 492 F.3d 1308, 1315 (Fed. Cir. 2007)).

The government responds, "MDA's source selection team rationally concluded 2KD's proposal was unawardable because the required approach to MCS2 is simply missing."  Gov't's Cross-MJAR at 19.  The government reasons, "nothing within its proposal addresses the need to manage and provide oversight management for multiple networks and the existing hybrid cloud environments."  *Id.*  The government explains "2KD failed to provide an approach for providing assistance and oversight management for an IT environment *that includes* hybrid cloud computing environment."  *Id.* at 25 (first citing AR Tab 127 at 16089–90; and then citing AR Tab 127 at 16090 (emphasis added)).  Five Stones argues MDA "faulted 2KD for failing to address the requirement for a hybrid cloud infrastructure and proposing 'specific detail' to a hybrid cloud solution" given plaintiff "fails even to mention 'multiple networks and hybrid cloud computing environments.'"  5SRC Cross-MJAR at 18, 23.  In response to plaintiff's judicial estoppel argument, the government argues it "has not advanced an inconsistent position in this [case] with its prior litigation position at GAO."  Gov't's Reply at 5 (internal quotes omitted).  Five Stones responds to plaintiff's judicial estoppel argument by positing judicial estoppel does not apply to Five Stones.  5SRC Reply at 1.

**B.      Plaintiff's Argument MDA's Past Performance Evaluation of 2KD was Arbitrary, Capricious, an Abuse of Discretion, or Otherwise not in Accordance with Law**

Plaintiff argues MDA's "relevancy analysis failed to include consideration of the 'contract type' and 'dollar value' of PPI contracts," departing from the Solicitation.  Pl.'s MJAR at 24.  Instead of analyzing plaintiff's relevancy for each PPI contract's "similarity between service/support effort, complexity, dollar value, contract type, and subcontractors," MDA only analyzed "2KD's relevancy for the four factor areas"—(1) Architecture and System Engineering; (2) Network Operations Support; (3) Cyberspace; and (4) Management.  *Id.* at 25–26 (cleaned up).  Plaintiff argues MDA failed to consider pertinent information in 2KD's proposal related to past performance—specifically the alleged lack of consideration of contract type and dollar value related to PPI 1, PPI 3, PPI 5, and PPI 6.  *Id.* at 27–31.  Plaintiff in its Reply argues the government impermissibly relied on the Vargas Declaration in its Response as a *post hoc* rationalization of MDA's review of 2KD's PPI.  Pl.'s Resp. and Reply at 16 (discussing AR Tab 150.2 at 19716–17 ("Vargas Decl.")).  In response to the government's and Five Stones' *Blue & Gold* arguments, *see infra*, plaintiff reiterates it was not challenging the Solicitation terms.  *Id.* at 19–20.

The government responds, "MDA evaluated everything in Section C of the proposals [for relevancy] which included factors like contract type, dollar value, complexity, and other factors named in the solicitation."  Gov't's Cross-MJAR at 32.  The government reasons "MDA found many of 2KD's PPI contracts as not relevant or only somewhat relevant in the network support task" and "[h]ence, MDA had a rational basis to conclude that the contracts, provided by 2KD, that did not address all the tasks in the solicitation, did not yield a perfect past performance rating."  *Id.*  The government argues:  "there is no support for 2KD's claims that the evaluators ignored information contained in 2KD's Past Performance Questionnaires (PPQs) or CPARs that were submitted."  *Id.* at 34.  The government contends "2KD alters the solicitation to argue that the [g]overnment should have focused on 'dollar value,' contract types, and performance duration," *id.* at 36 (citing MJAR at 27–29), and "[i]t was incumbent upon 2KD to raise this type of alleged error before the close of the bidding process," *id.* (citing *Blue & Gold*, 492 F.3d at 1315).  Five Stones asserts MDA "consider[ed] contract type and dollar value in evaluating past performance."  5SRC Cross MJAR at 27.  The government in its Reply notes "[t]he [Vargas] declaration simply reinforces [MDA]'s rational decision as demonstrated in the proposal analysis report."  Gov't's Resp. at 14.

**C.      Plaintiff's Argument the Source Selection Decision was Irrational**

Plaintiff reasons, if MDA gave plaintiff a "Good" rating for MSC2 and given a "Substantial Confidence" rating for Past Performance, "2KD would have received equal ratings with [Five Stones] in all evaluation categories and was $25,653,676 lower than Five Stones in Cost/Price," and "[h]ad these errors not occurred, 2KD had a substantial chance of receiving the award."  Pl.'s MJAR at 35.  The government states, "[w]hen a contract that is the subject of a bid protest was awarded based upon best value, [MDA] has even greater discretion than if the contract were awarded upon the basis of cost alone."  Gov't's Cross MJAR at 43 (first citing *Galen Med. Assoc., Inc. v. United States,* 369 F.3d 1324, 1330 (Fed. Cir. 2004); and then citing

*E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996)). To demonstrate the rationality of MDA's selection, the government turns to the Source Selection Decision (SSD), which "notes the various benefits that 5SRC brings and why it warrants a 10.8% price premium, even assuming that 2KD's proposal was awardable." *Id.* (citing AR Tab 128 at 16184 (MDA Source Selection Decision)). The government concludes "5SRC simply was the best value to [MDA] considering its unique advantages, technically sound proposal, and highly relevant past performance." *Id.* at 44.

### D.    Plaintiff's Argument MDA's Errors Prejudiced Two Knights

Plaintiff asserts "to establish prejudice, 2KD is 'required to show that there was a substantial chance it would have received the award but for [the Government's] errors in the bid process.'" Pl.'s MJAR at 35 (citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1358 (Fed. Cir. 2005)). According to plaintiff, if MDA gave Two Knights a "Good" rating for MSC2, and a "Substantial Confidence" rating for Past Performance, then plaintiff and Five Stones would have had equal ratings. *Id.* at 35. And in that scenario, Two Knights asserts it would have had a substantial chance of receiving the contract due to its much lower price. *Id.* The government disagrees, explaining "there [is] no substantial chance for award when a protestor's final proposal is technically deficient even if MDA conducted a flawed past performance evaluation." Gov't's Cross-MJAR at 43.

### E.    Plaintiff's Argument the Court Should Issue a Permanent Injunction

Plaintiff seeks injunctive relief, asserting (1) it "has demonstrated success on the merits"; (2) it will suffer irreparable harm by "not perform[ing] work and receiv[ing] profits"; (3) the balance of harms favor injunction because 2KD will "the los[e] the opportunity to fairly compete, los[e] profits[] and business opportunities, and hav[e] its workforce recruited"; and (4) public interest favors injunction "to protect the integrity of the procurement system." Pl.'s MJAR at 36–38. The government and Five Stones agree that this request should be denied because plaintiff cannot demonstrate success on the merits. *See* Gov't's Cross-MJAR at 45–49; *see also* 5SRC Cross-MJAR at 28.

## III.    Legal Standards

### A.    Bid Protest Jurisdiction and APA Review

The Tucker Act, as amended by the Administrative Dispute Resolution Act (ADRA), provides this court jurisdiction over "action[s] by an interested party objecting to a solicitation by a federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." Administrative Dispute Resolution Act, Pub. L. No. 104-320, 28 U.S.C. § 1491(b)(1) (1996). The term "interested party" means "actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Am. Fed'n of Gov't Emps. v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001). "[T]o prevail in a protest the protester must show not only a

significant error in the procurement process, but also that the error prejudiced it." *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1562 (Fed. Cir. 1996).

The Court evaluates bid protests under the framework laid out in Section 706 of the Administrative Procedure Act. 28 U.S.C. § 1491(b)(4); *see also Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001); MATTHEW H. SOLOMSON, COURT OF FEDERAL CLAIMS: JURISDICTION, PRACTICE, AND PROCEDURE § 8-37 (2016) (footnote omitted) (first citing 28 U.S.C. § 1491(b)(4); and then quoting 5 U.S.C. § 706(A), (D)); 28 U.S.C. § 1491(b)(4) (2024) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.")). "[T]he proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A): a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1350–51 (Fed. Cir. 2004) (quoting *Adv. Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1057–58 (Fed. Cir. 2000)). An agency's action is arbitrary, capricious, or an abuse of discretion if "the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or . . . is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). Since the arbitrary and capricious standard is "highly deferential," a reviewing court must "sustain an agency action evincing rational reasoning and consideration of relevant factors." *Adv. Data Concepts*, 216 F.3d at 1058 (citing *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)). A court, therefore, will not "substitute its judgment" for the agency's so long as the agency's decision was reasonable. *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 998–99 (Fed. Cir. 2018) (quoting *R & W Flammann GmbH v. United States*, 339 F.3d 1320, 1322 (Fed. Cir. 2003)).

### B.      Judgment on the Administrative Record in a Bid Protest

"[Rule] 52.1(c) [of the Rules of the United States Court of Federal Claims ('RCFC')] provides for judgment on the administrative record." *Huntsville Times Co. v. United States*, 98 Fed. Cl. 100, 104 (2011); *see also Bannum*, 404 F.3d at 1353–54. The court may set aside an agency action if plaintiff has proven "either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa*, 238 F.3d at 1332. The rational basis test requires the court to ask "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." *Dell Fed. Sys., L.P.*, 906 F.3d at 992 (quoting *Banknote*, 365 F.3d at 1351). "When a challenge is brought on the second ground, the disappointed bidder must show 'a clear and prejudicial violation of applicable statutes or regulations.'" *Impresa*, 238 F.3d at 1333 (quoting *Kentron Haw., Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C. Cir. 1973)). "[D]e minimis errors do not require the overturning of an award." *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 1000 (Fed. Cir. 1996). A bid protest plaintiff must establish alleged "errors in the procurement process significantly prejudiced" plaintiff by showing "there was a 'substantial chance' it would have received the contract award but for the errors." *Bannum*, 404 F.3d at 1353 (quoting *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003)).

C.      **Permanent Injunction**

When deciding whether a permanent injunction is warranted, a court considers:

(1) whether . . . the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.

*PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004).

## IV.    **Whether MDA's Evaluation of 2KD's MCS2 Proposal was Arbitrary, Capricious, an Abuse of Discretion, or Otherwise not in Accordance with Law**

Plaintiff alleges MDA "departed from the stated evaluation scheme, applied unstated evaluation criteria, and failed to recognize and consider pertinent information" in assessing 2KD's MCS2 proposal submission, leading MDA to improperly rate its MCS2 approach.  Pl.'s MJAR at 12.  Plaintiff alleges MDA impermissibly examined "whether 2KD proposed how to design, develop, or, . . . 'accomplish,' a hybrid cloud environment."  *Id.* at 13.  Plaintiff reasons, "[n]either the Instructions nor the Evaluation Criteria indicated [MDA] would evaluate whether an offeror proposed how to 'accomplish' a hybrid cloud environment . . . yet [MDA] assigned 2KD a Deficiency for not having done so."  *Id.* at 13–14.  Plaintiff relies on the government's position at the GAO to show MDA applied unstated criterion in its evaluation by using the term "accomplish" in describing the MCS2 objectives.  *See id.* at 14–15.  Plaintiff compares MCS2, Element 1 and MCS3 - Architecture and Engineering to demonstrate the Solicitation contemplated offerors proposing their approach to network engineering in another part of the Solicitation, MCS3, arguing "[a]ssisting in the design and development of cloud environments . . . is closer to what was required under MCS3 [rather than MCS2."  *Id.* at 15–16.  Plaintiff also argues MDA "ignored relevant information . . . within 2KD's proposal" because 2KD described "its approach to and understanding of providing assistance and oversight management of the IT environment described in MCS2, Element 1, which included hybrid cloud environments."  *Id.* at 19.  Specifically, plaintiff points to the following in its proposal as "describing its approach and understanding in detail," noting that this "approach to supporting network operations involved 'oversee[ing] all network operations functions'":

Figure III.2-1 summarized our overall approach to executing MDA CIO's Network Operations Support mission and challenges. . . . [Figure III.2-1] represents how we synchronize and integrate key activities to drive standardization through governance; achieve process improvements by analyzing performance data, *oversee all network operations functions*; and evaluate, assess, and review associate contractor work against key performance indicators. [XXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX]

*Id.* at 19–20 (quoting AR Tab 120c2 at 14804 (2KD Proposal - FPR) (emphasis added).  Figure III.2.1 is as follows:



*Id.*  Plaintiff also points to its Figure III.2-3, which "reflect[s] 2KD's 'comprehensive approach' . . . [to] 'assisting, overseeing, and managing MDA[]'s complex and geographically dispersed IT environment'":





*Id.* at 20–21.  Plaintiff summarized Figure III.2-3 as "a substantial portion of 2KD's 'approach,'" explaining:

> [Figure III.2-3] established, in pertinent part, that 2KD's approach included, but was not limited to, creating a governance structure, communicating and coordinating among involved parties, engaging stakeholders to [XXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX] define clear objectives, monitor performance, ensure appropriate metrics are met through quality assurance by regular audits, conduct regular reviews and solicit feedback for continuous improvement, undertake proactive steps to identify and manage[] risks, develop and maintain continuity and disaster recovery plans, appropriately allocate resources, [XXXXXXXXXXXXXXXXXXXXXXX] and take other steps to minimize attrition, put [XXXXXXXXXXXXXXXXXXXXX] in place to assist with innovation and technology adoption, and ensure detailed, robust documentation of "processes, decisions, and changes[.]"

*Id.* at 22–23 (citing AR Tab 120c2 at 14807–08 (2KD Proposal - FPR)).  Because plaintiff's approach to IT oversight "includes, but is not limited to, hybrid cloud environments," plaintiff contends MDA's conclusion lacked a rational basis.  *Id.* (quoting AR Tab 127 at 16151 (2KD Proposal - FPR)).  In its Reply, plaintiff argues the government is judicially estopped from changing its position before this Court from its position at the GAO:  "MCS2, Element 1, under its plain, clear language, did not require offerors to propose how to 'accomplish' a hybrid cloud environment, yet this was the basis upon which [MDA] evaluated 2KD and upon which [MDA] argued and succeeded at the GAO.  If [MDA] is now able to abandon that position and advance an inconsistent position, the exact harm sought to be prevented by judicial estoppel will occur."  Pl.'s Resp. and Reply at 6.  In response to the parties' *Blue & Gold* arguments, *see infra*, plaintiff reiterates it was not challenging the terms of the Solicitation.  *Id.* at 13.

The government responds "MDA's source selection team rationally concluded 2KD's proposal was unawardable because the required approach to MCS2 is simply missing from 2KD's proposal." Gov't's Cross-MJAR at 19. The government explains "nothing within [2KD's] proposal addresses the need to manage and provide oversight management for multiple networks and the existing hybrid cloud environments." *Id.* Because "2KD . . . delete[d] out its entire approach for a material requirement of the contract,"[6] "MDA possessed no evidence in 2KD's FPR that it understood the hybrid cloud computing environments." *Id.* at 21. The government also argues 2KD "fails to link the alleged error to [MDA]'s source selection decision" because 2KD relies on MDA's briefs at the GAO which are "irrelevant." *Id.* at 22. The government argues, in any event, MDA's "statements before the GAO are accurate reflections of the evaluation criteria" because MDA "rightfully explained the solicitation requirements using the very words from the solicitation's evaluation criteria." *Id.* at 23. Regarding plaintiff's MCS3 argument, the government explains "[t]he offerors were to address the operation, oversight, and management of an existing solution in MCS2 and address how to construct a future network solution in MCS3." *Id.* at 19. The government also argues, "[t]o the extent that 2KD [disputes] whether the solicitation required it to specifically address the hybrid cloud environment, this argument is waived [under *Blue & Gold*] because . . . 2KD is . . . challeng[ing] . . . the clear terms of the solicitation."[7] *Id.* at 23–24 (citing *Blue & Gold*, 492 F.3d at 1315. Although plaintiff "posits that its approach to providing network support sufficiently described how it met the requirement to support hybrid cloud computing environments," the government contends 2KD's proposal and, specifically its thirteen focus areas in Figure III.2-3, fail to address hybrid cloud computing environments. *Id.* at 26 (citing Pl.'s MJAR at 21–22). The government reasons, "the technical evaluation team followed its evaluation scheme and used its discretion to rate proposals according to [MDA]'s technical requirements found in the solicitation." *Id.* at 28. In response to plaintiff's judicial estoppel argument, the government argues it "has not advanced an inconsistent position in this [case] with its prior litigation position at GAO." Gov't's Reply at 5 (internal quotes omitted).

Five Stones argues plaintiff's proposal fails to adequately discuss hybrid cloud support, containing "limited explanation or generic references to 'network operations.'" 5SRC Cross-MJAR at 21. Five Stones asserts Figure III.2-1, which "[plaintiff] concedes . . . constitutes the bulk of its hybrid cloud solution," "does not mention hybrid support at all." *Id.* (quoting AR Tab 120c2 at 14804 (2KD Proposal - FPR)). Five Stones reasons Figure III.2-3 "is merely a series of

---

[6] The government states plaintiff's first proposal "provided information under the heading of how it will '[f]acilitate use of cloud and hybrid cloud solutions,'" Gov't's Cross-MJAR at 20 (first quoting AR Tab 145b at 17421–22 (Contracting Officer Statement of Facts); and then quoting AR Tab 24c2 at 5729 (2KD Initial Proposal)), but "2KD deleted any mention of hybrid cloud computing environments in its final proposal," *id.* at 21 (citing AR Tab 120c2 at 14804 (2KD Proposal – FPR)). Plaintiff agreed this was the case at oral argument, and argued its final proposal was "more detailed" than its initial proposal and, though not stating directly, necessarily encompassed a hybrid cloud solution. Tr. at 42:18–22 ("[PLAINITFF]: [Regarding] what we deleted out [in our proposal], we deleted out a couple of sentences – literally just a few words – that contained the term 'hybrid cloud,' and in place we put a more detailed description of what we would do.").

[7] At oral argument, the government agreed plaintiff's arguments do not fall within the *Blue & Gold* doctrine "to the extent [plaintiff's arguments relate to] interpretation." Tr. at 73:22–74:12 (government counsel discussing *Blue & Gold* doctrine related to 2KD's past performance arguments); *see generally Blue & Gold Fleet, L.P.*, 492 F.3d at 1313. Given the Court finds plaintiff's arguments are challenges to MDA's strict reading of the Solicitation's Evaluation Criteria, *see supra*, the Court need not address the government's and Five Stones' *Blue & Gold* challenges.

future promises without robust discussion." *Id.* at 22.  Five Stones notes plaintiff "fails even to mention 'multiple networks and hybrid cloud computing environments.'" *Id.* at 23.  Five Stones further alleges its own proposal "addressed every aspect of the SOW in Network Operations Support in detail." *Id.* at 24.  Five Stones argues, "[t]o the extent 2KD claims a misunderstanding or lack of clarity in [the Solicitation], that constitutes a challenge to the Solicitation's terms." *Id.* at 20 (first citing *Blue & Gold*, 492 F.3d at 1313; and then citing *COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1382 (Fed. Cir. 2012)).  Five Stones responds plaintiff's judicial estoppel argument does not apply to 5SRC.  5SRC Reply at 1; *see also* Tr. at 27:7–28:10.

The Federal Circuit has held when a protestor's challenges "deal with the minutiae of the procurement process in such matters as technical ratings . . . , which involve discretionary determinations of procurement officials . . . [,] a court will not second guess" those determinations.  *E.W. Bliss Co.*, 77 F.3d at 449.  The Federal Circuit has explained "[p]rocurement officials have substantial discretion to determine which proposal represents the best value for the government." *Id.*  The Federal Circuit has also explained the standard for determining whether an agency applied unstated criterion:  if the agency "used a significantly different basis in evaluating the proposals than was disclosed." *Banknote*, 56 Fed. Cl. at 387, *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004).

Plaintiff argues MDA impermissibly examined "whether 2KD proposed how to design, develop, or, as [the government] now puts it, 'accomplish,' a hybrid cloud environment" when the Solicitation only required 2KD's "approach to and understanding of providing assistance and oversight management of the described IT environment."  Pl.'s MJAR at 13, 17.  Here, the Solicitation specifically provides the following evaluation method for MCS2, *see supra* Section I:

> The Government will evaluate the Offeror's approach to, and understanding of oversight and governance of Network Operations Support, to *accomplish* the following mission tasks:
>
> MCS2 Element #1: *Providing assistance and oversight management of* a complex and geographically dispersed IT environment operating at various classification levels that includes multiple networks and *hybrid cloud computing environments*.

AR Tab 15c at 1516 (Solicitation Section M - Evaluation Factors for Award) (emphasis added); *see also* AR Tab 16a at 1554 (Solicitation Section L - Instructions, Conditions, and Notices to Offerors).  MDA broke MCS2 into two "Parts" in its evaluation, with "Part 1" addressing "multiple networks" and "Part 2" addressing "hybrid cloud computing environments":

- 17 -

| MCS2: Network Operations Support<br><br>The Government will evaluate the Offeror's approach to, and understanding of oversight and governance of Network Operations Support, to accomplish the following mission tasks:<br><br>Element #1 - Providing assistance and oversight management of a complex and geographically dispersed IT environment operating at various classification levels that includes multiple networks and hybrid cloud computing environments. | MCS2 Element #1, (Part 1): Providing assistance and oversight management of a complex and geographically dispersed IT environment operating at various classification levels that includes multiple networks |
| | MCS2 Element #1, (Part 2): Providing assistance and oversight management of a complex and geographically dispersed IT environment operating at various classification levels that includes hybrid cloud computing environments. |

AR Tab 127 at 16089 (MDA Proposal Analysis Report).[8]  Applying this language to 2KD's proposal, MDA found 2KD's proposal to be "unawardable" because "2KD fails to propose specific language with regard to hybrid cloud infrastructure and lacks proposing any specific detail to a hybrid cloud solution."  *See* AR Tab 127 at 16089–90 (MDA Proposal Analysis Report); *see supra* Section I.C.  MDA further explained:  "the proposed approach for providing assistance and oversight management of a complex and geographically dispersed IT environment operating at various classification levels that includes hybrid cloud computing environments failed to address hybrid cloud infrastructure nor propose how to manage and/or support hybrid cloud infrastructure."  AR Tab 127 at 16090 (MDA Proposal Analysis Report).

Here, MDA does not discuss in its decision—as plaintiff argues—"whether 2KD proposed how to design, develop, or, . . . 'accomplish,' a hybrid cloud environment," *see* Pl.'s MJAR at 13.  Rather, MDA only describes 2KD's "proposed approach for providing assistance and oversight management of a complex and geographically dispersed IT environment operating at various classification levels  . . . [as] fail[ing] to address hybrid cloud infrastructure [and failing to] propose how to manage and/or support hybrid cloud infrastructure."  AR Tab 127 at 16090 (MDA Proposal Analysis Report).  MDA's analysis aligns with what the Solicitation stated MDA would do:  "evaluat[ing] the Offeror's approach to, and understanding of oversight and governance of Network Operations Support, to accomplish the following mission tasks . . . [including] [p]roviding assistance and oversight management of a complex and geographically dispersed IT environment . . . that includes multiple networks and hybrid cloud computing environments."  AR Tab 15c at 1516 (Solicitation Section M - Evaluation Factors for Award).  In support of its argument that MDA applied an unstated criterion, plaintiff cites to the government's brief *at the GAO* to summarize the government's position on MDA's evaluation of 2KD's proposal given, there, the government allegedly stated the "offer[ors'] need to discuss an] . . . approach 'to accomplish[ing] […] hybrid cloud computing environments.'"  Pl.'s MJAR at 14; *see also id.* at 17–18.  Relying on this summary, plaintiff argues the government at the GAO "omit[ted] key words and phrases from . . . MCS2, Element 1, most notably, the phrase

---

[8] At oral argument, the government conceded this breakdown of "Part 1" and "Part 2" was not explicit in the Solicitation.  Tr. at 9:23–10:6 ("[GOVERNMENT]: Those parts were, not as in the wordage.  Now, the conjunction 'and' though was noted, and it was indicating for all offerors that they were to address the overall IT environment, but specifically, as a part of that environment, multiple networks and hybrid cloud environments.").  The Solicitation simply recited the directions in Section M of the Solicitation, *supra*.  AR Tab 15c at 1516 (Solicitation Section M - Evaluation Factors for Award).  To the extent plaintiff argues the breakdown was not explicit in the Solicitation, the Court finds MDA's evaluation steps did not lack a rational basis.  *See Impresa*, 238 F.3d at 1337.

'[p]roviding assistance and oversight management of,'" Pl.'s MJAR at 14, and even raising judicial estoppel against the government regarding its argument before this Court.[9]  At oral argument, plaintiff agreed the GAO merely quoted the Solicitation in its decision, and plaintiff's challenge largely relates to the GAO's and the government's use of ellipses to shorten the Solicitation's language.  Tr. at 27:17–28:6 ("THE COURT:  You agree what the [g]overnment quoted the GAO was quoting the solicitation[?] . . . [PLAINTIFF]:  . . . [W]ith certain words and phrases taken out in a way that we argue changes the meaning, but yes."); Tr. at 20:1–4 ("[THE COURT:]  [Y]our argument hinges on the importance of an ellipses here?  [PLAINTIFF]: That's correct, because it changes the meaning of the [Solicitation] instructions."); *see also* Tr. at 25:9–25:17.  Reviewing the applicable GAO materials confirms the government (at the GAO) merely abbreviated the Solicitation to demonstrate plaintiffs' failure to include *any* discussion of a hybrid cloud computing environment.[10]  *See* AR Tab 145a at 17381 (Gov't's GAO Brief).

---

[9] Plaintiff argues:  "[t]he doctrine of judicial estoppel prevents [the government] from abandoning what it successfully argued at the GAO" regarding the government's alleged MCS2, Element 1 position requiring offerors to propose how to "accomplish" a hybrid cloud environment.  Pl.'s Reply at 1–2; *see also* Tr. 12:18–14:20; *see also* Tr. at 26:7–26:16.  The government responds, "judicial estoppel profits 2KD nothing because [the government] has not changed its position," which was "offerors were required to provide an approach to and understanding of accomplishing the relevant task within MSC2, Element 1, which was to 'provide assistance and oversight management of a complex and geographically dispersed IT environment operating at various classification[] levels that includes multiple networks and hybrid cloud computing environments.'"  Gov't's Reply at 4; *see also* Tr. 17:25–18:7 ([GOVERNMENT]:  All the [GAO] did was . . . [say] 'to accomplish'—ellipses—and instead of saying 'to accomplish' over and over again, . . . they put the ellipse, omitted [the 'providing assistance and oversight management' language and continued] . . . 'to accomplish the hybrid cloud computing environment,' citing to the solicitation.  It's a clear reference to the solicitation.").  At oral argument, Five Stones stated, "even if [judicial estoppel] does [apply against the government], [plaintiff's judicial estoppel] argument was not raised as to Five Stones, and Five Stones' arguments it its MJAR would survive any finding of judicial estoppel."  Tr. at 27:7–28:10.  Five Stones also agreed it "can still make arguments for the [g]overnment" if the Court found the government to be judicially estopped.  *Id.*

[10] At the GAO, the government stated:

> [T]he Solicitation plainly stated under MCS2 that the Protester must offer an approach "to accomplish [. . .] hybrid cloud computing environments." AR, tab 3a at 20-21. Yet the Protester did not. The Protester failed to address--or even mention--hybrid cloud computing environments in that section of its proposal. AR, tab 21a. So the Agency reasonably gave the Protester a deficient and unacceptable rating for MCS2.

AR Tab 145a at 17381 (Gov't's GAO Brief).  Here, in its cross-MJAR, the government similarly stated:

> The solicitation stated that "[t]he offeror shall propose *its approach to* and understanding of Architecture and Engineering across the IT functional areas, *to accomplish the following mission tasks.*" AR Tab 15c at 1516 (emphasis added). The *relevant task* to accomplish is MSC2, Element 1, which in part, was to propose an approach to "provide assistance and oversight management of a complex and geographically dispersed IT environment operating at various classification levels that includes multiple networks and *hybrid cloud computing environments.*" *Id.* (emphasis added). Thus, when the agency explained that the task at hand was to provide an approach to accomplish that assistance and to accomplish that oversight, the agency rightfully explained the solicitation requirements using the very words from the solicitation's evaluation criteria.

Gov't's Cross-MJAR at 23.  The GAO's opinion stated:  "The protester's interpretation is contrary to the express terms of the solicitation[] [because] [t]he solicitation provided that the agency would assess the offeror's approach to accomplish the task of supporting an IT system that included hybrid cloud computing environments."  AR Tab 153 at 19753 (30 Apr. 2024 GAO Op.).

Both the government and the GAO quoted the Solicitation's language, *see id.*; *see* AR Tab 153 at 19753 (30 Apr. 2024 GAO Op.); it cannot be the government has raised a new argument by virtue of using an ellipses to quote the solicitation. The Court finds the government "has not advanced an inconsistent position . . . with its prior litigation position [at the GAO]." *Agility Pub. Warehousing Co. K.S.C.P. v. United States*, 969 F.3d 1355, 1368 (Fed. Cir. 2020) (noting the standard courts will follow to determine if judicial estoppel applies, including "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped").

Regarding the unstated criterion argument, plaintiff attempts to argue MDA's evaluation from AR Tab 127 at 16090 of "[p]roposing hybrid cloud infrastructure or a hybrid cloud solution" deviated from the Solicitation. *See* Tr. at 35:7–37:16 (discussing AR Tab 127 at 16090 (MDA Proposal Analysis Report)). When asked whether MDA used any words *not* taken directly from the Solicitation, plaintiff argued MDA's use of "hybrid cloud infrastructure" and "hybrid cloud solution" was substantially different from the Solicitation's language of "hybrid cloud computing environment." *See* Tr. at 39:13–22. Plaintiff specifically stressed the Solicitation "doesn't say to propose a hybrid cloud infrastructure or provide how you would propose a hybrid cloud solution." *Id.* Plaintiff also agreed, however, "the words 'accomplish' and 'hybrid cloud computing environment' are in the solicitation." *See* Tr. at 37:17–37:20; *see also* Tr. at 38:23–39:4 ("THE COURT: . . . [F]or MSC2, the language [in MDA's deficiency determination is] 'these elements do not show an understanding of MDA hybrid cloud requirements.' 'Hybrid cloud' and 'to accomplish' are all right in the solicitation, correct? [PLAINTIFF]: Those words or terms are in the solicitation, that's correct."). Plaintiff also attempts to argue that, given the MCS3 language – Architecture and Engineering across IT Functional Areas (MCS3)[11] calls for "[a]ssisting in the design and development of cloud environments," Pl.'s MJAR at 16, then offerors were not "required under MCS2, Element 1," *id.*, to discuss accomplishing a hybrid cloud solution. The Court notes the Solicitation, however, stated, "each response to each subfactor for Factor 1, Mission Capability, shall be written on a stand-alone basis so that its contents may be evaluated without cross-reference to other subfactors." AR Tab 16a at 1548 (Solicitation Section L - Instructions, Conditions, and Notices to Offerors). Given this language, the Court finds MDA did not intend to "cross-reference to other subfactors" in its review of Mission Capability; any interpretation of what MDA intended for offerors to submit for MCS3 is unrelated to MCS2. *See id.* Offerors are responsible for submitting well-written, detailed proposals. *Structural Assocs., Inc./Comfort Sys. USA*

---

[11] The Solicitation instructions for MCS3 is as follows:

> The Offeror shall propose its approach to and understanding of Architecture and Engineering across IT functional areas, to accomplish the following mission tasks:

> MCS3 Element #1: Performing research and provide technical assessments on the future technologies and environments proposed for DOD IT Reform to ensure MDA can appropriately leverage efficiencies and quality control throughout all stages of DoD onboarding ensuring synchronization of IT services and technology.

> MCS3 Element #2: Performing technical analysis and evaluation to assist with developing a cloud platform, architecture strategy and governance to establish a cloud center of excellence (CCOE).

AR Tab 16a at 1554 (Solicitation Section L - Instructions, Conditions, and Notices to Offerors).

*(Syracuse) Joint Venture v. United States*, 89 Fed. Cl. 735, 744 (2009).  MDA need not look to other portions of 2KD's proposal intended for different evaluation factors and subfactors.  *See id.*

The Court disagrees with plaintiff's interpretation of MDA's review of 2KD proposal here.  MDA followed the terms of the Solicitation in evaluating 2KD's "approach to, and understanding of oversight and governance of Network Operations Support, to accomplish the . . . mission task[] [of] [p]roviding assistance and oversight management of a complex and geographically dispersed IT environment operating at various classification levels that includes multiple networks and hybrid cloud computing environments" in its analysis, and so MDA did not apply the alleged unstated criterion of "design[ing], develop[ing], or, . . . 'accomplish[ing],' a hybrid cloud environment," AR Tab 15c at 1516 (Solicitation Section M - Evaluation Factors for Award).  MDA did not "use[] a significantly different basis in evaluating the proposals than was disclosed" because it held 2KD to the exact terms of the Solicitation.  *Banknote*, 56 Fed. Cl. at 387, *aff'd*, 365 F.3d 1345; AR Tab 127 at 16090 (MDA Proposal Analysis Report).  Specifically, MDA's explanation of 2KD's "proposed approach . . . [as] fail[ing] to address hybrid cloud infrastructure [and failing to] propose how to manage and/or support hybrid cloud infrastructure" reflects the Solicitation's directions—which required the offerors' "approach to, and understanding of oversight and governance of Network Operations Support, to accomplish . . . [p]roviding assistance and oversight management of . . . hybrid cloud computing environments." AR Tab 15c at 1516 (Solicitation Section M - Evaluation Factors for Award).  MDA simply found 2KD failed to include *any* discussion of hybrid cloud computing environments.  Although Plaintiff acknowledges "the instructions are to be read together," *see* Tr. at 10:23–12:6, plaintiff ultimately asks the Court to *ignore* the phrase "accomplish[ing] the following mission tasks" and to instead, focus on the broad directive to "[p]rovid[e] assistance and oversight management of a complex and geographically dispersed IT environment" in the Solicitation to bolster its point.  AR Tab 15c at 1516 (Solicitation Section M - Evaluation Factors for Award).  Plaintiff also wishes to ignore the plain language where the Solicitation calls for a discussion of "multiple networks *and* hybrid cloud computing environments." *Id.* (emphasis added).  MDA must account for all language in the Solicitation in reviewing proposals and, specifically, should not ignore the Solicitation—which calls for at least *some* discussion of "hybrid cloud computing environments." *See id.*  Thus, MDA did not apply an unstated criterion by assessing 2KD's "approach to, and understanding of oversight and governance of Network Operations Support, to *accomplish* . . . [p]roviding assistance and oversight management of a complex and geographically dispersed IT environment . . . that includes . . . hybrid cloud computing environments" because that is explicitly what the Solicitation stated MDA would do.  AR Tab 15c at 1516 (Solicitation Section M - Evaluation Factors for Award); *Banknote*, 56 Fed. Cl. at 387, *aff'd*, 365 F.3d 1345.

2KD ultimately challenges MDA's strict reading of the Solicitation for MCS2, Element 1.  According to plaintiff, its proposal "provide[d] [an] approach for assistance and oversight management of the IT environment described in MCS2, Element 1, which includes hybrid cloud environments," Pl.'s MJAR at 13, but 2KD's proposal does not discuss hybrid cloud computing environments—a reality that 2KD cannot escape.  The government stressed this at oral argument: MDA "faulted [plaintiff] for not mentioning the infrastructure, hybrid cloud at all.  No cloud, no hybrid discussion." Tr. at 40:12–40:22; *see also* Tr. at 41:5–41:12.  At oral argument, the parties agreed to define "hybrid cloud" as "a mixed computing environment where applications are run

using a combination of computing, storage, and services in different environments – public clouds and private clouds, including on-premises data centers." Pl.'s MJAR at 7 n.6 (citing GOOGLE CLOUD, https://cloud.google.com/learn/what-is-hybrid-cloud); *see* Tr. at 43:5–46:14. 2KD cites to Figures III.2-1 and III.2-3 in its proposal to demonstrate its "approach to supporting network operations [which] involve[] 'oversee[ing] all network operations functions,'" *see supra*. These figures, however, do not explicitly discuss hybrid cloud computing environments—only a broad "approach for assistance and oversight management of the IT environment." Pl.'s MJAR at 13. Namely, 2KD's proposal only discusses its ability to "oversee all network operations functions," *see* Figure III.2-1, and its "strategy for assisting, overseeing, and managing MDA[]'s complex and geographically dispersed IT environment," *see supra* Figure III.2-3. At oral argument, plaintiff cited to several portions of its proposal in an attempt to show it indeed encompassed hybrid cloud environments. Plaintiff suggested, for example, the word "technology" from Figure III.2-3 necessarily covers "hybrid cloud computing environments." *See* Tr. at 51:19–52:9. When discussing the deletion of a reference to hybrid cloud computing environments from its proposal*, see supra* n.5, plaintiff struggled to articulate where in its final proposal 2KD discussed hybrid cloud computing environments, and admitted its proposal lacked synonyms for hybrid cloud computing environments. Tr. at 49:14–50:3 ("THE COURT: Where in [Figure III.2-3] does it discuss the hybrid cloud computing environments? [PLAINITFF]: So it never uses that term, but the chart reflects 2KD's approach to providing assistance and oversight management of environments, which include hybrid cloud computing environments."); *see also* Tr. at 51:19–21 ("[PLAINTIFF]: I don't know that they put synonyms for those words in here because they intended for this approach to cover those things."); *see also* Tr. at 52:5–9 ("I don't believe that they . . put other terms in here for hybrid clouds and just simply used synonyms."); *see also* Tr. at 53:6–8 ("[S]o I don't believe that they set out synonyms for 'cloud' or 'hybrid cloud' . . . instead of 'hybrid cloud [computing environments].") ; *see also* Tr. at 59:4–13. Contrary to plaintiff's argument MDA "failed to recognize and consider pertinent information in the appropriate section of 2KD's proposal," Pl.'s MJAR at 12, MDA reviewed plaintiff's proposal in full, *see* AR Tab 127 at 16089–90 (MDA Proposal Analysis Report). Plaintiff simply failed to include any discussion of hybrid cloud computing environments. *See* AR Tab 120c2 (2KD Proposal - FPR). As conceded by plaintiff, 2KD's proposal does not explicitly discuss hybrid cloud computing environments. *See* Tr. at 49:14–50:3. What is more, 2KD's proposal does not propose anything akin to what the parties agreed a "hybrid cloud" entails—"storage, and services where applications are run using a combination of computing, storage, and services in different environments – public clouds and private clouds, including on-premises data centers." *See* AR Tab 120c2 (2KD Proposal - FPR); *see* Tr. at 43:5–46:14; *see also* Tr. at 55:1–55:8. Indeed, 2KD's proposal was not specific enough to meet the terms of the Specification, as 2KD's proposal only contains broad references to "technology," *see* Tr. at 51:19–52:9, and 'oversee[ing] all network operations functions,'" AR Tab 120c2 at 14804 (2KD Proposal - FPR); *see also* Tr. at 50:9–50:20.

MDA's assessment does not rise to the level of applying unstated criterion. *Banknote*, 56 Fed. Cl. at 387, *aff'd*, 365 F.3d 1345, and 2KD's challenge "deal[s] with the minutiae of the procurement process." *E.W. Bliss Co.*, 77 F.3d at 449. As such, MDA rationally found 2KD's proposal deficient; the Court "will not second guess" the agency's determination. *Id.*; *Impresa*, 238 F.3d at 1332 ("[T]he procurement official's decision [did not] lack[] a rational basis.").

2KD's challenge fails because MDA followed the terms of the Solicitation in its assessment of 2KD's discussion of hybrid cloud computing environments.

## V.   Whether MDA's Past Performance Evaluation of 2KD was Arbitrary, Capricious, an Abuse of Discretion, or Otherwise not in Accordance with Law

Plaintiff argues "[t]he Agency's relevancy analysis failed to include consideration of the 'contract type' and 'dollar value' of PPI contracts," departing from the Solicitation.  Pl.'s MJAR at 24.  Instead of analyzing plaintiff's relevancy for each PPI contract's "similarity between service/support effort, complexity, dollar value, contract type, and subcontractors," plaintiff argues MDA only analyzed "2KD's relevancy for the four factor areas"—(1) Architecture and System Engineering; (2) Network Operations Support; (3) Cyberspace; and (4) Management.  *Id.* at 25–26.  Regarding "contract type," plaintiff argues "five of 2KD's seven PPI contracts were either identical or very similar contract types as the Contract, but . . . [MDA] did not consider this information."  *Id.* at 27 (citing AR Tab 127 at 16118).  Regarding "dollar value," plaintiff argues "[t]wo of 2KD's PPI contracts [(PPIs 4 and 6)] have 'per year' values which exceed [the awarded 'per year' Cost/Price for Five Stones]," and "two additional PPI contracts [(PPIs 3 and 5)] submitted by 2KD exceed [the 'base award' Cost/Price value for Five Stones]."  *Id.* at 28.  More substantively, plaintiff compares its past performance information of System High Corp.— 2KD's joint venture—and Five Stones with Two Knights' to argue MDA "reached the irrational result of assigning, if combined, higher 'task' relevancy ratings to the much smaller of the two incumbent contracts by departing from the stated evaluation scheme in a manner which prevented [MDA] from considering all elements of relevancy," including price and contract type.  *Id.* at 29–30.  Plaintiff also alleges MDA "fail[ed] to consider all of the 2KD PPI available to it, including PPI, PPQ responses, and CPARs."  *Id.* at 31.  Plaintiff specifically challenges in-depth MDA's relevancy review of PPIs 1 and 5, *see infra*.  Plaintiff also argues MDA impermissibly relied on the Vargas Declaration in its Response as a *post hoc* rationalization related to MDA's review of 2KD's past performance information.[12]  Pl.'s Resp. and Reply at 16.  In response to the parties' *Blue & Gold* arguments, *see infra*, plaintiff reiterates it is not challenging the terms of the Solicitation.  *Id.* at 19–20.

The government responds, "MDA evaluated everything in Section C of the proposals . . . includ[ing] . . . contract type, dollar value, complexity, and other factors named in the solicitation."  Gov't's Cross-MJAR at 32 (first citing AR Tab 127 at 16119 (Proposal Analysis Report); and then citing AR Tab 120d2 at 14921–22 (2KD Past Performance Information)).  The government reasons "MDA found many of 2KD's PPI contracts as not relevant or only somewhat relevant in the network support task" and, as a result, "MDA had a rational basis to conclude that the contracts . . . did not yield a perfect past performance rating."  *Id.*  The government argues:  "there is no support for 2KD's claims that the evaluators ignored information contained in 2KD's . . . PPQs [] or CPARs" and MDA "affirmed that it evaluated all

---

[12] Plaintiff argues in its Reply the government relies on a "*post hoc* declaration to argue that it did consider contract type and dollar value in the relevancy assessment . . . , but that declaration should be disregarded and should not be considered" given MDA "submitted a declaration dated March 13, 2024" which was months after MDA awarded the contract to Five Stones.  Pl.'s Reply at 16.  At oral argument, the government agreed the Court need not rely on the Vargas Declaration in its decision.  Tr. at 65:9–11 ("[THE COURT:]  [GOVERNMENT], you also cite to the Vargas [] [D]eclaration.  Does the Court need to rely on that?  [GOVERNMENT]: The Court does not.").  The Court does not rely upon the Vargas Declaration in its decision and finds this issue moot.

of the recent PPI it received, including contract type and dollar value." *Id.* at 34–35 (citing AR Tab 150.2 at 19716–17 (Solicitation Section M - Evaluation Factors for Award)). The government explains "MDA was very clear that while contract type, dollar, value, complexity, and other factors were going to be considered, the focus was on the . . . four" tasks. *Id.* (first citing AR Tab 15c at 1521 (Solicitation Section M - Evaluation Factors for Award); and then citing AR Tab 150.2 at 19717 (Solicitation Section M - Evaluation Factors for Award)). The government contends "2KD alters the solicitation to argue that the Government should have focused on 'dollar value,' contract types, and performance duration," *id.* at 36 (citing MJAR at 27–29), and "[i]t was incumbent upon 2KD to raise this . . . before the close of . . . bidding," *id.* (citing *Blue & Gold*, 492 F.3d at 1315).[13]  In response to plaintiff's PPI 1 argument, the government states, "[p]ure dollar value was not the criteria the Government was to focus on in its evaluation" and, further, dollar value does not necessarily correlate to contract similarity. *Id.* at 36–37. Responding to plaintiff's PPI 5 challenge, the government argues "2KD's proposal fails to indicate anything about the underlying networks." *Id.* at 39. The government replies its Vargas "[D]eclaration simply reinforces [MDA]'s rational decision." Gov't's Reply at 14.

Here, plaintiff makes two broad arguments related to MDA's evaluation of Past Performance Information:  (1) MDA applied an unstated evaluation scheme in assessing 2KD's past performance, deviating from the Solicitation, Pl.'s MJAR at 26; and (2) MDA ignored certain information within 2KD's proposal related to past performance, *id.* at 27, 30. Turning to plaintiff's first argument, plaintiff asserts MDA *only* analyzed "2KD's relevancy for the four factor areas"—(1) Architecture and System Engineering; (2) Network Operations Support; (3) Cyberspace; and (4) Management—instead of what the Solicitation called for:  analyzing plaintiff's relevancy for each PPI contract for "'similarity between service/support effort, complexity, dollar value, contract type, and subcontractors.'" *Id.* at 25–26. Here, the Solicitation specifically provides the following evaluation method for past performance:

> The past performance evaluation determines the Government's confidence in the Offeror's probability of successfully performing the required effort *based on the demonstrated recent*[14] *and relevant record of performance*, and *quality of performance*, in supplying services that meet the contract's requirements.[]
> . . . .
> If the past performance information is recent, a relevancy assessment will be conducted on the Offerors' past contracts. Relevancy as it pertains to past performance information is a measure of the extent of similarity between the service/support effort, complexity, dollar value, contract type, and subcontractor(s). This area demonstrates the depth and breadth of relevant experience of the Offeror.

---

[13] As discussed *supra* n.7, the government agreed plaintiff's arguments do not fall within the *Blue & Gold* doctrine "to the extent [plaintiff's arguments relate to] interpretation." Tr. at 73:22–74:12 (government counsel discussing *Blue & Gold* doctrine related to 2KD's past performance arguments); *see generally Blue & Gold Fleet, L.P.*, 492 F.3d at 1313. Given the Court finds plaintiff's arguments are challenges to MDA's strict reading of the Solicitation's Evaluation Criteria, *see supra*, the Court need not address the government's and Five Stones' *Blue & Gold* challenges.

[14] The parties do not dispute recency, which is defined as "work performed during the five-year period preceding the date of this solicitation release." AR Tab 15c at 1520 (Solicitation Section M - Evaluation Factors for Award).

The Past Performance Evaluation Team will conduct an in-depth review and evaluation of all performance data obtained to determine whether those efforts relate to the proposed effort.

In assessing relevancy, the Government will focus on the following tasks:

a) Architecture & System Engineering
b) Network Operations Support
c) Cyberspace Mission Support
d) Management

AR Tab 15c at 1520–21 (Solicitation Section M - Evaluation Factors for Award) (emphasis added); AR Tab 127 at 11618–19 (MDA Proposal Analysis Report); *see also* AR Tab 16a at 1561.  Applying this language to 2KD's proposal for each of 2KD's PPIs, MDA found the following:

3.3.5.   FACTOR 5 – Past Performance

| PPI # | Two Knights Defense (2KD) | | Contract Number | Contract Type | Contract Value | Data Source | Recency (Y/N) | Architecture & System Engineering Relevancy | Network Operations Support Relevancy | Cyberspace Mission Support Relevancy | Management Relevancy | Quality |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **Prime** | | | | | | | | | | | |
| PPI1 | | | | CPFF | | 1 PPQ and 1 CPAR | Y | R | SR | VR | VR | S |
| PPI2 | | | | T&M | | 1 PPQ | Y | SR | NR | VR | R | E |
| PPI5 | | | | Fixed Price Award Fee | | 1 PPQ and 5 CPARs | Y | SR | NR | SR | R | E |
| PPI7 | | | | CPFF | | 1 PPQ and 6 CPARs | Y | SR | NR | SR | VR | VG |
| | **Subcontractors** | | | | | | | | | | | |
| PPI 3 | | | | Cost Reimbursable | | 1 PPQ and 5 CPAR | Y | VR | SR | SR | R | S |
| PPI4 | | | | CPFF | | 3 PPQ and 4 CPARs | Y | R | SR | SR | R | E |
| PPI6 | | | | CPFF and FFP | | 2PPQ and 3 CPARs | Y | R | SR | NR | R | E |

AR Tab 127 at 16118 (MDA Proposal Analysis Report).  MDA explained:  "2KD's Performance Confidence Assessment is Satisfactory Confidence based on 2KD's recent/relevant/quality performance record."  AR Tab 127 at 16119 (MDA Proposal Analysis Report).  In assigning 2KD "Satisfactory Confidence,"  MDA noted the following:

**2KD (Satisfactory Confidence)**
- Recency - All seven PPI's for 2KD were determined to be recent.
- Relevancy - 2KD demonstrated one contract with a Very Relevant rating and three contracts with Relevant ratings under Architecture & Systems Engineering; two contracts with Very Relevant ratings under Cyberspace Mission Support; and two contracts with Very Relevant ratings and five with Relevant ratings for Management. 2KD had at least two contracts with Very Relevant or Relevant ratings in three of the four categories. Network Operations Support was evaluated as Somewhat Relevant and Not Relevant for all contracts.
- Quality - The Quality of the PPIs/contracts were rated between Satisfactory and Exceptional. 2KD was the only Offeror with contracts where quality was evaluated as Satisfactory.

The PPET determined 5SRC's Past Performance merited a confidence rating of Substantial Confidence therefore, Factor 5: Past Performance is a discriminator with 5SRC receiving the highest rating.

AR 127 at 16154 (MDA Proposal Analysis Report).

Here, MDA explicitly includes columns for both "contract type" and "contract value" in its analysis of 2KD's Past Performance for relevance. *See* AR Tab 127 at 16118 (MDA Proposal Analysis Report). Plaintiff views MDA's review of 2KD's PPI as excluding both "contract type" and "value" in its relevancy assessment because, looking at the various columns in 2KD's Past Performance assessment, MDA "could not have included these two elements of the relevancy analysis in its assessment of the 'tasks' [as] there is no way to break down or apportion 'contract type' and 'dollar value' per 'task.'" Pl.'s MJAR at 26. Plaintiff stated the separate columns for price and contract type in the chart on AR Tab 127 at 16118 do not necessarily "show these were considered in the relevancy analysis." Tr. at 66:5–13; *see also* Tr. at 67:17–23. When asked at oral argument how MDA could have better demonstrated its consideration of "contract type" and "dollar value" in the chart on AR Tab 127 at 16118, plaintiff explained "the past performance evaluation should be redone where the contract type, contract value, it all goes into a relevancy assessment for the contract, not a task, for the contract as a whole, because that's what the solicitation says." Tr. at 76:1–6; *see also* Tr. at 76:15–24 ("[PLAINTIFF:] [F]or example, [MDA] would look at these four tasks and how they relate to the work to be done under the contract [for PPI 5]. Then [MDA] would look at the contract type, because that's required [and] . . . [MDA] would look at the dollar value as a measure of the size or scope of that contract, and then [MDA] would, based on that, according to the solicitation, [MDA] would assign a relevancy rating for that contract.").

What plaintiff fails to recognize is MDA's assessment in the chart on AR page 16118 *is* a summary of MDA's overall relevancy assessment of 2KD's PPI. *See* AR Tab 127 at 16118 (MDA Proposal Analysis Report); *see also* Tr. at 74:25–75:18 ("[GOVERNMENT]: . . . [T]he performance evaluation team pulled out stuff to that chart, and they made specific findings that they analyzed the entirety of [plaintiff]'s Section C, which included . . . contract type, value, price"). Plaintiff conceded this at oral argument, agreeing MDA's analysis is summarized in the chart. Tr. at 64:14–65:6 ("THE COURT: So for this analysis we are looking at the chart on [AR Tab 127 at] 16118? [PLAINTIFF]: That's the summary that the agency provided, correct."). While MDA included separate columns for assessing the relevancy of the four factors this does not mean MDA ignored "contract type" and "value" in its relevancy analysis. *See id.* Contrary to plaintiff's argument, MDA explicitly included "contract type" and "value" in its relevancy assessment as indicated in its Proposal Analysis Report, *see supra*. AR Tab 127 at 16118 (MDA Proposal Analysis Report). The chart on AR Tab 127 at 16118 demonstrates MDA considered

contract type and dollar value; MDA could not make this chart *without* considering contract type and dollar value given MDA included specific columns for these values. *See id.* (including the contract type and dollar value for all of 2KD's PPIs). MDA did not, as plaintiff argues, "inappropriately limit[] the relevancy analysis." Pl.'s MJAR at 26. Rather, MDA applied the evaluation method as stated specifically in the Solicitation, including a discussion of "service/support effort, complexity, dollar value, contract type, and subcontractor(s)." AR Tab 15c at 1520–21 (Solicitation Section M - Evaluation Factors for Award). MDA indeed provides more narrow relevancy ratings for the four tasks, but MDA stated it would do this in the Solicitation. *Id.* (Solicitation Section M - Evaluation Factors for Award) ("In assessing relevancy, the Government will focus on the following tasks: a) Architecture & System Engineering[;] b) Network Operations Support[;] c) Cyberspace Mission Support[;] and d) Management"). Given MDA applied the Solicitation language for evaluating PPI as stated— including a discussion of "service/support effort, complexity, dollar value, contract type, and subcontractor(s)" and the "four tasks," AR Tab 15c at 1520–21, MDA's assessment does not rise to the level of applying an "unstated criterion." *Banknote*, 56 Fed. Cl. at 387, *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004). MDA performed the exact analysis the Solicitation said MDA would do. *Compare* AR Tab 15c at 1520–21 (Solicitation Section M - Evaluation Factors for Award) (emphasis added) *with* AR Tab 127 at 16118 (MDA Proposal Analysis Report) *and* AR 127 at 16154 (MDA Proposal Analysis Report). The type of argument 2KD makes here—that MDA should go outside the words of the Solicitation and consider "contract type" and "dollar value"— it is what the Court should avoid. *E.W. Bliss Co.*, 77 F.3d at 449 (holding when a protestor's challenges "deal with the minutiae of the procurement process in such matters as technical ratings . . . , which involve discretionary determinations of procurement officials . . . [,] a court will not second guess" those determinations).

The Court next addresses plaintiff's arguments related to MDA ignoring certain information within 2KD's proposal related to past performance—specifically the alleged lack of consideration of contract type and dollar value within PPIs 1, 3, 5, and 6. Pl.'s MJAR at 27, 30. Contrary to plaintiff's argument, MDA "conducted an in-depth review and evaluation of all performance data obtained." AR Tab 127 at 16120 (MDA Proposal Analysis Report). MDA even specifically stated it "used the PPIs provided by 2KD, information obtained from PPQs, and data obtained from CPARS." *Id.* The PPET provided detailed reviews of each PPI submitted by 2KD in its Proposal Analysis Report in the context of each of the "four tasks." *See Id.* at 16120–36 (MDA Proposal Analysis Report). 2KD makes brief reference to PPI 4 and 6 to note "[t]wo of 2KD's PPI contracts have 'per year' values which exceed this number" with PPI 4's "'per year' value [being] [XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX] years)" and 2KD's PPI 6 having a [XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX] years)." Pl.'s MJAR at 28. Plaintiff also makes passing reference to the value of PPIs 3 and 5 as "exceed[ing] this total 'base award' dollar value." *Id.* Plaintiff argues a consideration of these dollar values would have shown further similarity between the PPIs and the Solicitation. *Id.* MDA, however, already considered the values of these contracts in its relevancy analysis. AR Tab 127 at 16118 (MDA Proposal Analysis Report) (showing MDA's consideration of value for 2KD's PPIs 3, 4, 5, and 6 of $[XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX] respectively). Further, plaintiff agreed at oral argument MDA did not state it would consider the "per year" value of PPIs—"just . . . dollar value." Tr. at 82:24–83:1.

Specifically addressing plaintiff's challenge related to PPI 1—its System High Contract HQ0147-17-C-0055—plaintiff argues MDA "errantly assigned, if combined [overall], lower 'task' relevancy ratings to" 2KD's PPI 1 compared to the ratings for Five Stones' contract. Pl.'s MJAR at 29. Plaintiff reasons its lower overall ratings for PPI 1 are "the result of [MDA] failing to consider all available PPI" 2KD submitted, including contract type, and dollar value of $56,125,003. *Id.* For PPI 1, however, MDA specifically included contract type and dollar value in its analysis. *See* AR Tab 127 at 16118 (MDA Proposal Analysis Report) (showing MDA's consideration 2KD's PPI 1 value of $56,125,003 and contract type of CPFF). MDA rated PPI 1 "Somewhat Relevant" because 2KD failed to include specific details that would allow MDA to consider its relevancy, specifically that 2KD "did not provide specific examples of activities" nor "specific details from which a relevance determination [could] be made." AR Tab 127 at 16125 (MDA Proposal Analysis Report). For example, MDA notes "SYSTEM HIGH's listing of geographic locations supported . . . provides no specific details from which a relevancy determination can be made." *Id.* Further, MDA explained: "SYSTEM HIGH did not provide specific examples of activities they performed to understand their 'support' in oversight management of DevSecOps environments utilizing Agile CI/CD software development methodologies." *Id.* MDA followed the terms of the Solicitation here by reviewing whether PPI 1 was relevant by reviewing PPI 1 and assessing the level of relevancy using "service/support effort, complexity, dollar value, contract type, and subcontractor(s)" and the "four tasks"— specifically, in this example, "Network Support Operations." AR Tab 15c at 1520–21 (Solicitation). Using the Solicitation's stated evaluation method, MDA rationally concluded 2KD's proposal lacked sufficient detail. *Id.* Even additional consideration of contract value would not cure the deficiencies within PPI 1 related to a dearth of example activities and detail. *Impresa*, 238 F.3d at 1332 ("[T]he procurement official's decision [did not] lack[] a rational basis.").

The Court next addresses plaintiff's specific challenge related to PPI 5—its System High Corp.'s [XXXXXXXXXXXXXXXXXXXXXX]  Here, MDA explained PPI 5 "did not include a description of the [DARPA's (Defense Advanced Research Projects Agency)] networks, so [MDA could] not . . . determine the complexity or magnitude of effort required" and 2KD failed to "provide sufficient detail related to [] 'oversight management of complex and geographically dispersed IT Environments.'" AR Tab 127 at 16127 (MDA Proposal Analysis Report). MDA also noted PPI 5 "did not provide evidence of supporting test, experiment, or CDI events or RDT&E." *Id.* Regarding two of 2KD's subcontractors—[XXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX]—MDA also explained, "although, [XX] and [XXXX] demonstrated experience with network operations, as subcontractors, they are only providing 9% of the effort on this proposal." AR Tab 127 at 16140 (MDA Proposal Analysis Report). Here, for each of plaintiff's challenges, MDA adequately reviewed and considered all PPI information and found PPI 5 to be "Not Relevant" for Network Operations Support, *see supra*, on account of concrete deficiencies in the proposal. AR Tab 127 at 16120 (MDA Proposal Analysis Report). The Court addresses each of plaintiff's arguments, *infra*.

First, plaintiff argues a "consideration of the dollar value[XXXXXXXXXX] . . . would have provided a basis for [determin[ing] the complexity or magnitude of effort required] as it is an indication of the size and complexity of the contract." Pl.'s MJAR at 31–32. Plaintiff argues it included a discussion of cloud environments and networks in PPI 5, *id.* at 32–33, and so

MDA's "findings under PPI 5 . . . contradict the PPI in [MDA]'s possession," *id.* at 33.  Plaintiff also argues the information in the PPQ and CPAR showed PPI 5 was "Exceptional" and adequately met past performance relevancy.  *See id.*  Contrary to plaintiff's argument, Pl.'s MJAR at 31–32, some *additional* consideration of the dollar value would not have necessarily provided a basis for determining the complexity or magnitude of effort required because MDA found 2KD's lack of description of the DARPA networks fatal in its relevancy analysis.  *See* AR Tab 127 at 16127 (MDA Proposal Analysis Report).  At oral argument, plaintiff argued it "provide[d] a [sufficient] description of [its] networks" by virtue of its description of "the services as being provided at more than 400 locations and 130 special programs" and, essentially, the onus was on MDA to consider how price and contract type might be relevant such that they speak to the complexity and magnitude required.  *See* Tr. at 91:2–92:17; *see also* Tr. 89:18–90:7 ([PLAINTIFF]:  [Dollar value is] an indication of how much work has gone into the contract, of the overall effort for the contract, and so there's a dollar value there.  The relevancy definition said dollar value was part of the definition. . . ."").  In response, the government emphasized 2KD should have been more detailed in its description of network type, which was ultimately MDA's concern.  *See* Tr. at 94:18–96:7 ("[GOVERNMENT:]  The agency was looking for network operations support, and . . . they wanted a description of those networks . . . . That's what was missing."); *see also* Tr. at 95:12–17 ("[GOVERNMENT:]  [2KD] would have to discuss [the] type of networks [we] are [] dealing with.  Are these cloud networks?  Are these hybrid, cloud computing environments, to the extent those exist, and then explain how [2KD] provide[d] specific support for those, not just general discussions about . . . this DARPA cloud strategy.").  Here, MDA found 2KD's discussion of environments and networks in PPI 5 lacking and 2KD fails to rebut its broad description of networks failed to meet MDA's threshold of relevancy under the Solicitation.  AR Tab 127 at 16127 (MDA Proposal Analysis Report).  Some additional consideration of price or contract type by MDA would not cure these deficiencies.  *See Impresa*, 238 F.3d at 1332 ("[T]he procurement official's decision [did not] lack[] a rational basis.").

Second, plaintiff argues "a CPAR for . . . PPI [5] contract listed support for 'research & development programs' as a requirement under this contract, stating 'Individuals supporting these tasks are required to perform a combination of functions described in the Project Work Statement for research & development programs at all classification and protection levels[.]'" Pl.'s MJAR at 33.  Here, MDA rationally found PPI 5 "did not provide evidence of supporting test, experiment, or CDI events or RDT&E" given PPI 5 indeed lacked any description to this end.  AR Tab 127 at 16127 (MDA Proposal Analysis Report).  At oral argument, plaintiff stated PPI 5's "price would have been an overall indicator of . . . the comparative effort of this contract versus the contract to be awarded under the procurement at issue."  Tr. at 96:20–23.  Plaintiff pointed to the CPAR supporting PPI 5 as encompassing a reference to "research and development programs," Tr. at 98:8–15 (plaintiff); Pl.'s MJAR at 33 (citing AR Tab 76.3 at 12248), but plaintiff fails to show any description in PPI 5 that supports "evidence of supporting test, experiment, or CDI events or RDT&E."  *Compare* AR Tab 120d2 *with* AR Tab 127 at 16127 (MDA Proposal Analysis Report).  Given PPI 5 "did not provide evidence of supporting test, experiment, or CDI events or RDT&E," MDA's additional consideration of price or contract type would not remedy the PPI's flaws.  *See Impresa*, 238 F.3d at 1332 ("[T]he procurement official's decision [did not] lack[] a rational basis.").

Third, plaintiff notes MDA failed to consider [XX] and [XXXX] "as providing 9% each." Pl.'s MJAR at 33.  MDA noted the percent effort for those subcontractors to ultimately show the majority of the contract was performed by other, larger contractors who received *low* relevancy ratings—highlighting performance concerns for System High and Cintel.  AR Tab 127 at 16140 (MDA Proposal Analysis Report) ("The PPET determined that, although, [XX] and [XXXX] demonstrated experience with network operations, as subcontractors, they are only providing 9% of the effort on this proposal.  On the other hand, SYSTEM HIGH and CINTEL, who are the primes on this proposal, and performing over 50% of the work combined, received Somewhat Relevant and Not Relevant ratings, respectively.").  At oral argument, the government cited to another portion of MDA's analysis specifically referring to 9% participation each—clarifying MDA did not misunderstand [XX] and [XXXX] provided 9% each.  *See* AR Tab 127 at 16138 (listing "[XX] 9%" and "[XXXX] 9%"); *see* Tr. at 105:16–106:15.  This portion of the record discussed at oral argument, AR Tab 127 at 16138, demonstrates MDA did not misunderstand the percentage of effort contributed by [XX] and [XXXX] given MDA lists 9% each for both contractors.  *See id.*  In light of these deficiencies within 2KD's proposal, MDA rationally found 2KD's proposal for past performance warranted a "Satisfactory Confidence" rating.  *Impresa*, 238 F.3d at 1332 ("[T]he procurement official's decision [did not] lack[] a rational basis.").

## VI.   Plaintiff's Argument the Source Selection Decision was Irrational

Plaintiff argues "[t]he SSA's Best Value Decision, as reflected in the SSD[], was flawed in that it relied upon and incorporated all of the errors and flaws in the underlying evaluations." Pl.'s MJAR at 35.  Plaintiff asserts 2KD was "not fully include[d] . . . in the tradeoff analysis because of the errantly assigned MCS2 Deficiency" and that "had [MDA] properly conducted the MCS2, Element 1 evaluation, 2KD would have received a least a Purple/Good rating in MCS2 because 2KD also had a Strength under MCS2."  *Id.* (citing AR Tab 128 at 16180–84 (MDA Source Selection Decision)).  Although "Five Stones' higher Past Performance confidence rating would have been a discriminating factor had 2KD not received the MCS2 Deficiency," plaintiff maintains "2KD should have received the same Confidence rating [for past performance] as Five Stones" "[h]ad [MDA] fully considered all Past Performance information available."  *Id.*  "But for these errors, which were incorporated into the SSD[] and Best Value Decision, 2KD would have received equal ratings with 2KD in all evaluation categories and was $25,653,676 lower than Five Stones in Cost/Price.  Had these errors not occurred, 2KD had a substantial chance of receiving the award."  *Id.*

In response, the government posits "[w]hen a contract that is the subject of a bid protest was awarded based upon best value, [MDA] has even greater discretion than if the contract were awarded upon the basis of cost alone."  Gov't Cross MJAR at 43 (first citing *Galen*, 369 F.3d at 1330; and then citing *E.W. Bliss Co.*, 77 F.3d at 449).  The government argues the SSD "notes the various benefits that 5SRC brings and why it warrants a 10.8% price premium, even assuming that 2KD's proposal was awardable."  *Id.* at 43 (citing AR Tab 128 at 16184 (MDA Source Selection Decision)).  According to the government, "5SRC simply was the best value to [MDA] considering its unique advantages, technically sound proposal, and highly relevant past performance."  *Id.* at 44.  Thus, under this reasoning, plaintiff "would have to prevail on both of its substantive arguments to show prejudice."  *Id.*

"It is well-established that contracting officers have a great deal of discretion in making contract award decisions, particularly when, as here, the contract is to be awarded to the bidder or bidders that will provide the agency with the best value." *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1355 (Fed. Cir. 2004).

Here, plaintiff avers "[t]he SSA's Best Value Decision . . . was flawed in that it relied upon and incorporated all of the errors and flaws in the underlying evaluations" related to MCS2 and Past Performance, Pl.'s MJAR at 35, but as the Court held *supra* Sections IV and V, MDA rationally found 2KD's proposal (1) deficient for MSC2, and (2) of "Satisfactory Confidence" for Past Performance. *See supra* Sections IV, V.  The Solicitation stated "[t]he [g]overnment will select for award the most advantageous proposal *representing the best value* to the Government based upon an integrated assessment of Past Performance, Mission Capability and Cost/Price" and the "[a]ward may be made to a higher rated, higher priced Offeror where the Source Selection Authority (SSA) reasonably determines that the mission capability and/or past performance of the higher priced Offeror outweighs the price differential."  AR Tab 15c at 1512 (Section M - Evaluation Factors for Award) (emphasis added); *see supra* Section I.  MDA awarded the contract to Five Stones because its "proposal's total evaluated price of $263,408,408 represents the best value to the [g]overnment based on receiving the highest rating for the most important Past Performance factor and superior ratings for MCS1 and MCS2."  AR Tab 128 at 16183 (MDA Source Selection Decision).  MDA particularly noted "[e]ven if the 2KD's proposal did not have a Deficiency, the 5SRC proposal would still represent the best value to the [g]overnment and would warrant the $25,653,676 or 10.8% price premium over 2KD" "due to the superior Past Performance confidence rating and superior advantages offered by 5SRC in MCS1 and MCS2."  AR Tab 128 at 16184 (MDA Source Selection Decision).  As MDA rationally concluded 2KD's proposal was flawed regarding MCS2 and Past Performance, and MDA found Five Stones' proposal "represents the best value to the [g]overnment," AR Tab 128 at 16183 (MDA Source Selection Decision), the SSA's Best Value Decision followed the terms of the Solicitation and was not flawed. *Banknote*, 365 F.3d at 1355.  The Court "will not second guess" MDA's best value determination. *Impresa*, 238 F.3d at 1332.

## VII.    Plaintiff's Argument MDA's Errors Prejudiced Two Knights

Had MDA given plaintiff a "Good" rating for MSC2, and a "Substantial Confidence" rating for Past Performance, plaintiff alleges that it would have had an equal rating to Five Stones. Pl.'s MJAR at 36; *see* Tr. at 108:23–109:2.  Plaintiff further concludes it would have had a substantial chance of receiving the contract in that scenario due to plaintiff's much lower price. Pl.'s MJAR at 36.  The government disagrees, asserting "this protest ground must be denied because there was no substantial chance for award when a protestor's final proposal is technically deficient even if [MDA] conducted a flawed past performance evaluation."  Gov't's Cross-MJAR at 43.

"To prevail in a bid protest, a protestor must show a significant, prejudicial error in the procurement process. . . . To establish prejudice, a protestor . . . must show 'that there was a substantial chance it would have received the contract award but for that error.'" *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (citing *Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1582 (Fed. Cir. 1996)).

Here, plaintiff fails to demonstrate the existence of significant errors in the procurement process, especially given that MDA rationally concluded 2KD's proposal was flawed with regard to MCS2 and Past Performance. *Id.*; *see supra* Sections IV and V.  Further, MDA found Five Stones' proposal "represents the best value to the [g]overnment based on receiving the highest rating for the most important Past Performance factor and superior ratings for MCS1 and MCS2," AR Tab 128 at 16183 (MDA Source Selection Decision)).  At oral argument, plaintiff agreed it must succeed on both (1) its challenge related to MSC2; and (2) its challenge related to Past Performance to show MDA's best value decision was flawed and 2KD suffered prejudice. Tr. at 106:17–24 ("[PLAINTIFF]: We would agree that to establish prejudice, we would have to succeed on both MCS2 and past performance."); *see also* Tr. at 108:4–12.  As the Court has already determined there is no "existence of significant errors" in MDA's award to Five Stones, plaintiff did not have a substantial chance of award and fails to establish prejudice.  *Alfa Laval Separation*, 175 F.3d at 1367.

## VIII.  Plaintiff's Argument the Court Should Issue a Permanent Injunction

Plaintiff argues it is entitled to injunctive relief because (1) it "has demonstrated success on the merits"; (2) it will suffer irreparable harm by "not perform[ing] work and receiv[ing] profits from  the [c]ontract"; (3) the balance of harms favor injunction because 2KD will "los[e] the opportunity to fairly compete, . . . profits, and business opportunities, and hav[e] its workforce recruited"; and (4) public interest favors injunction "to protect the integrity of the procurement system."  Pl.'s MJAR at 36–38.

When evaluating whether or not to grant permanent injunctive relief, courts consider whether:  (1) "the plaintiff has succeeded on the merits of the case;" (2) "the plaintiff will suffer irreparable harm if the court withholds injunctive relief;" (3) "the balance of hardships to the respective parties favors the grant of injunctive relief;" and (4) "it is in the public interest to grant injunctive relief."  *PGBA*, 389 F.3d at 1228–29.  Plaintiff fails under the first prong and is not entitled to injunctive relief.  *See supra*.  The Court's analysis ends there.  *See Info. Tech. & Applications Corp. v. United States*, 51 Fed. Cl. 340, 357 n.32 (2001) ("Absent success on the merits, the other factors are irrelevant."), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003).

## IX.  Conclusion

For the foregoing reasons, the Court (1) **DENIES** plaintiff Two Knights' MJAR, ECF No. 30; (2) **GRANTS** the government's Cross-MJAR, ECF No. 33; (3) **GRANTS** Five Stones' Cross-MJAR, ECF No. 32; and (4) **FINDS AS MOOT** plaintiff's Motion for Preliminary Injunction, *see supra* n.3, ECF No. 2.  No costs awarded.  The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge